IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PERRY BEENEY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. No.: 22-00518-TMH |
| FCA US LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

# **MEMORANDUM OPINION**

Ian Connor Bifferato, THE BIFFERATO FIRM, Wilmington, DE; Rosemary M. Rivas, David Stein, Kyla J. Gibboney, GIBBS LAW GROUP LLP, Oakland, CA; William H. Anderson, HANDLEY FARAH & ANDERSON PLLC, Boulder, CO; Rebecca P. Chang, HANDLEY FARAH & ANDERSON PLLC, New York, NY; Simon Wiener, HANDLEY FARAH & ANDERSON PLLC, Boston, MA; Jon M. Herskowitz, BARON & HERSKOWITZ, Miami, FL – attorneys for Plaintiffs and the Proposed Classes

Patrick M. Brannigan, Jessica L. Reno, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE; Stephen A. D'Aunoy, Scott H. Morgan, THOMPSON COBURN LLP, St. Louis, MO – attorneys for Defendant FCA US LLC

October 20, 2023
Wilmington, Delaware

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before me is Defendant FCA US LLC's Motion (D.I. 21) to Dismiss Plaintiffs' First Amended Class Action Complaint (D.I. 19). For the reasons below, I grant FCA's motion to dismiss without prejudice.

**I.   BACKGROUND**

Plaintiffs Perry and Wendy Beeney, Nathan Benefield, Trevor Cole, Robert Collingwood, Gary Dutkowski, Billey E. Rowles, Jr., and Darell Upshaw filed this class action on April 22, 2022, on behalf of themselves and all others similarly situated against Defendants FCA US, LLC and Stellantis N.V (Stellantis). D.I. 1. On October 21, 2022, Plaintiffs amended their complaint to add John Bucalo, Daniel Childs, Scott Cook, and Jeff Vance as named Plaintiffs and additional state law claims against Defendants. D.I. 19. Defendant FCA US, LLC (FCA) is a Delaware limited liability company. D.I. 19 ¶ 99. Stellantis, one of the top ten largest automakers in the world, is FCA's parent company and is headquartered in the Netherlands. D.I. 19 ¶ 100.

Plaintiffs' First Amended Class Action Complaint (hereinafter, the Complaint) alleges statutory consumer protection claims, common law money had and received claims, and unjust enrichment claims under Florida, Georgia, Illinois, Iowa, Michigan, Missouri, New York, North Carolina, Ohio, Pennsylvania, and Texas law (collectively, the Class States). *Id.* The Complaint alleges that Chrysler, Jeep, Dodge, Ram, Fiat, and Maserati brand vehicles are marketed and distributed by Defendants through authorized dealers in every state of the United States. *Id.* ¶ 101. Between April 2018 and March 2022, Plaintiffs bought or leased new, model-year 2018 and later Chrysler, Jeep, Dodge, or Ram vehicles from authorized dealers in the Class States. *Id.* ¶¶ 1, 11, 16, 21, 27, 32, 38, 44, 50, 56, 62, 66, 72, 78, 84, 88, 94. At the time Plaintiffs bought or leased the vehicles, they each viewed the "Monroney sticker" affixed to their vehicle's window. *Id.* ¶¶ 12,

1

17, 22, 28, 33, 39, 45, 51, 57, 63, 67, 73, 79, 85, 89, 95. "Monroney sticker" is the colloquial term used to describe the federally mandated window sticker that must be affixed to every new vehicle sold in the United States. *Id.* ¶¶ 109–11.

The Automobile Information Disclosure Act of 1958 (AIDA) requires the Monroney sticker to list, among other things, the delivery cost charged to the dealer for transporting the vehicle from the factory. 15 U.S.C. § 1232(f)(3) (mandating that a window sticker must include "the amount charged, if any, to [any] dealer for the transportation of such automobile to the location at which it is delivered to such dealer"); *see also* D.I. 19 ¶¶ 111–12. The AIDA also dictates that the Monroney sticker must list the manufacturer's suggested base retail price of the vehicle (MSRP), as well as separate listings for the manufacturer's suggested retail price for optional equipment attached to the vehicle when delivered to the dealer. 15 U.S.C. § 1232(f)(1)–(2).

Plaintiffs allege that, in response to the AIDA being passed in the 1950's, automobile manufacturers and dealers in the United States reduced their delivery charges. D.I. 19 ¶¶ 113–14. Chrysler, for example, reduced its "[d]estination charges" for its vehicles by as much as $74 per vehicle. *Id.* ¶ 114. At the same time, Chrysler raised the MSRP of its vehicles by as much as $35 per vehicle. *Id.* Because consumers are sensitive to changes in MSRP, the Complaint alleges that Chrysler did not increase the MSRP by the same amount ($74) and thus did not recoup the full amount of lost revenue it suffered when it lowered its destination charges. *Id.* ¶¶ 121–27.

However, the Complaint alleges that changed circumstances since the AIDA's passage have caused FCA to revert to increasing its destination charges again. *Id.* ¶ 129. In the years since the AIDA passed, Plaintiffs allege that companies like FCA have developed a better understanding of how to use surcharges to manipulate consumer behavior. *Id.* ¶ 130. In particular, the Complaint

2

alleges that FCA understands that consumers are more sensitive to changes in MSRP than to changes in fixed surcharges that consumers perceive as fair, and so FCA has increased its destination charges to make additional profit without having to increase the MSRP. *Id.* ¶¶ 128–42. Plaintiffs also allege that the business practices of FCA have changed because dealerships now acquire vehicles on credit, paying FCA the full amount of the destination charge but only after the dealership sells the vehicles. *Id.* Because of this, Plaintiffs allege that FCA has been able to increase the destination charges on its vehicles without receiving pushback from the dealerships. *Id.* Plaintiffs conclude that this increased charge is passed on to consumers. *Id.* ¶ 161.

Consistent with AIDA requirements, the Monroney stickers on Plaintiffs' purchased or leased vehicles included a "destination charge" as a separate line item from the total price. *Id.* ¶¶ 12, 17, 22, 28, 33, 39, 45, 51, 57, 63, 67, 73, 79, 85, 89, 95. The Monroney stickers also listed the MSRP as a separate line item. *Id.* The Complaint alleges that the amount of each destination charge was substantially higher than the actual cost of delivering the subject vehicle to the authorized dealer. *Id.* ¶ 132. Plaintiffs allege that FCA charged more than the actual cost of delivery in the destination charge line item to avoid having to include that inflated charge in the MSRP line item, the charge to which customers are most sensitive when increased. *Id.* ¶¶ 130–32; *see also id.* ¶¶ 121–27.

## II.   LEGAL STANDARD

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than . . . 'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering whether to dismiss under Rule

12(b)(6), the court must first accept "all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court must draw all reasonable inferences in favor of the non-moving party but is not required to accept as true "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Accepting all well-pleaded facts as true, a complaint must be dismissed if it does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677–78. In essence, the complaint "must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

Further, for any claims sounding in fraud, a complaint must be dismissed if it does not meet the additional Rule 9(b) requirement that it be pled with particularity. *Iqbal*, 556 U.S. at 665; Fed. R. Civ. P. 9(b). In the Third Circuit, "Rule 9(b)'s particularity requirement requires a plaintiff to allege all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (internal quotations and citations omitted).

### III.   DISCUSSION

#### A.   Failure to State a Claim that Is Plausible on Its Face (Rule 8)

Plaintiffs' Complaint alleges three categories of claims: (1) violations of state statutes protecting consumers against deceptive and unfair practices (Counts II-XII), (2) state common-

4

law claims for money had and received (Count I), and (3) state common-law claims for unjust enrichment (Count XIII). For each category, Plaintiffs have failed to allege sufficient facts under Rule 8 for this Court to draw a reasonable inference that FCA has violated any state law.

### 1. Plaintiffs' Deceptive and Unfair Practices Claims (Counts II–XII)

Each of the Class States has a consumer protection statute that prohibits deceptive, unfair, or fraudulent acts in the conduct of trade or commerce.[1] Although the statutes are not identical, they all require a Plaintiff to at least establish that (a) the Defendant engaged in one or more deceptive, unfair, or fraudulent practices in trade or commerce, and (b) the Plaintiff suffered an injury as a result of that deceptive, unfair, or fraudulent practice.[2] Some, but not all, of the states also require the Plaintiff to establish that they relied on the defendant's deceptive, unfair, or

---

[1] *See* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204 (West); [Georgia] Fair Business Practices Act of 1975, Ga. Code Ann. § 10-1-393 (West); [Illinois] Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; [Iowa] Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.H.3 (West); Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.903 (West); Mo. Rev. Stat. §§ 407.020 (2000) Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020 (West); New York General Business Law, Article 22-a. Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 (McKinney); North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1.1 (West); [Ohio] Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02 (West); [Pennsylvania] Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-3 (West); [Texas] Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46 (West).

[2] *See supra* note 1; *see also, e.g.*, *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (applying Florida law); *Ussery v. Goodrich Restoration, Inc.*, 800 S.E.2d 606, 611 (Ga. Ct. App. 2017) (applying Georgia law); *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 80 (Ill. 2019) (applying Illinois law); *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015) (applying Iowa law); *Brownlow v. McCall Enterprises, Inc.*, 888 N.W.2d 295, 307 n.5 (Mich. Ct. App. 2016) (applying Michigan law); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016) (applying Missouri law); *Himmelstein v. Bender & Co., Inc.*, 171 N.E.3d 1192, 1197 (N.Y. 2021) (applying New York law); *Duffy v. Camp*, 882 S.E.2d 675, 696 (N.C. Ct. App. 2022) (applying North Carolina law); *Grgat v. Giant Eagle, Inc.*, 135 N.E.3d 846, 851 (Ohio Ct. App. 2019) (applying Ohio law); *American Express Bank, FSB v. Martin*, 200 A.3d 87, 94–95 (Pa. Super. Ct. 2018) (applying Pennsylvania law); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (applying Texas law).

fraudulent practice.[3] As explained below, I grant FCA's motion to dismiss Plaintiffs' consumer protection claims for two independent reasons. First, the Complaint does not sufficiently allege that FCA's destination charge practices constitute deceptive, unfair, or fraudulent acts. Second, the Complaint does not sufficiently allege that FCA's destination charge practices caused Plaintiffs a cognizable injury.

### a. *Deceptive, Unfair, or Fraudulent Practices*

In considering whether an action constitutes a deceptive, unfair, or fraudulent practice under the Class States' statutes, courts apply a reasonable consumer test.[4] If a reasonable consumer

---

[3] *See* cases cited *supra* note 2.

[4] *See, e.g.*, *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) (applying Florida and New York law and finding "the allegations in the Amended Complaint [were] sufficient to conclude that a *reasonable consumer* may be misled" (emphasis added) (internal citations omitted)); *Georgia ex rel. Carr v. Elite Integrated Med., LLC*, 533 F. Supp. 3d 1303, 1312 (N.D. Ga. 2021) (applying Georgia law and requiring "that the representation was likely to mislead *consumers acting reasonably* under the circumstance" (emphasis added)); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758 (N.D. Ill. 2015) (applying Illinois law and finding Plaintiff's fraud claims not plausible because "no *reasonable consumer*" would have been misled (emphasis added)); *Hamidani v. Bimbo Bakehouse LLC*, No. 22-CV-01026, 2023 WL 167513, at *2 n.2 (N.D. Ill. Jan. 12, 2023) (applying Georgia, Illinois, and Iowa law and asserting that the relevant states do not have meaningful differences and all use the reasonable consumer test); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (applying Florida, Illinois, Michigan, Missouri, and New York law and stating "[t]hese statutes all require plaintiffs to prove that the relevant labels are likely to deceive *reasonable consumers*," which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" (emphasis added) (internal quotations and citations omitted)); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761–62 (7th Cir. 2014) (applying Illinois, New York, and North Carolina law and stating "[a]ll of the applicable state consumer protection laws at issue here may be satisfied by proof that a statement is likely to mislead a *reasonable consumer*, even if the statement is literally true" (emphasis added)); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 838 (S.D. Ohio 2003) (applying Ohio law and using the reasonable consumer test); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (applying Pennsylvania law and defining "a deceptive act" as "conduct that is likely to deceive a *consumer acting reasonable* under similar circumstances" (emphasis added)); *Olson v. Major League Baseball*, 29 F.4th 59, 66 (2d Cir. 2022) (applying Florida and Texas law and holding "[t]he claims under the various state consumer protection laws fail for a similar reason—that is, the alleged statements by defendants . . . do not rise to the level of a deceptive or unfair practice that would plausibly mislead the *reasonable consumer* under these circumstances." (emphasis added)).

would be misled by the alleged practice, then this first element of a statutory claim is met.[5] Although the reasonable consumer inquiry generally presents a question of fact, courts have properly decided this issue as a matter of law where the alleged facts were such that no reasonable person would be misled.[6]

Here, Plaintiffs allege two theories of deception, unfairness, or fraud. The first is that FCA's affirmative practice of listing a destination charge that is more than the actual cost of delivering the vehicle to the dealership is deceptive, unfair, or fraudulent. D.I. 27 (Pl. Resp. Br.) at 11–13. The second is an omission theory: that FCA violates state law because it fails to explain to the consumer that the destination charge simply reflects the amount charged to the dealership and not the actual cost of transportation. *Id.* at 13–15.

FCA argues that Plaintiffs have not alleged a deceptive or unfair practice because the destination charge listed on the vehicles was the actual amount charged to the dealership, and FCA did not have a duty to provide a more detailed explanation of the destination charge. D.I. 22 (FCA

---

[5] *See supra* note 4.

[6] *E.g.*, *Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008) (applying Florida law); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303–04 (11th Cir. 2012) (applying Georgia law); *Gubala v. CVS Pharmacy, Inc.*, No. 14-c-9039, 2015 WL 3777627, at *6–7 (N.D. Ill. June 16, 2015) (applying Illinois law); *Huston v. Conagra Brands, Inc.*, No. 4:21-cv-04147, 2022 WL 4647251, at *6 (C.D. Ill. Sept. 30, 2022) (applying Iowa law); *Leaf v. Nike Inc.*, No. 2:20-cv-11491, 2020 WL 12230315, at *2–3 (E.D. Mich. Nov. 23, 2020) (applying Michigan law); *Rawa v. Monsanto Co.*, No. 4:17-cv-01252 AFG, 2017 WL 3392090, at *4 (E.D. Mo. Aug. 7, 2017) (applying Missouri law and acknowledging that, although whether a reasonable consumer is likely to be misled is usually a question of fact, a court may dismiss a claim under the MMPA as a matter of law in some situations); Mo. Ann. Stat. § 407.025 (West) ("A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."); *Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) (applying New York law); *Krawiec v. Manly*, 811 S.E.2d 542, 550 (N.C. 2018) (applying North Carolina law); *Anderson v. Discount Drug Mart, Inc.*, 169 N.E.3d 252, 262 (Ohio Ct. App. 2021) (applying Ohio law); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 516 (S.D.N.Y. 2018) (applying Pennsylvania law); *Malik v. GEICO Advantage Ins. Co., Inc.*, No. 01-19-00489-cv, 2021 WL 1414275, at *8 (Tex. App. Apr. 15, 2021) (applying Texas law).

Mot. Dismiss Br.) at 5, 11–15, 17–18. The destination charge was accurately listed as a separate line item on the Monroney stickers, as required by federal law, and Plaintiffs agreed to pay that price when contracting with the dealers to buy or lease their vehicles. *Id.*; *see also id.* at 8. According to FCA, no reasonable consumer would believe that the destination charge reflected only the actual cost of transporting the vehicle and included no profit for the manufacturer. *Id.* at 11–15.

Accepting all the factual allegations as true, this Court holds as a matter of law that no reasonable consumer would believe that the destination charges represented the actual cost of transporting the vehicles to the dealerships and included no manufacturer profit. The sole affirmative statement Plaintiffs point to as being deceptive, unfair, or fraudulent is the two-word term, "destination charge." But nothing about this term conveys to a consumer that the destination charge is the actual *cost* of transporting a vehicle to its destination. To the contrary, the term makes clear that it covers what the manufacturer *charges* for transporting the vehicle. Here, there is no allegation that the amount of any destination charge was more than what the manufacturer charged to the dealerships. Nor is there any allegation that FCA made other statements suggesting that the destination charge was anything but what it charged to the dealers. Thus, using the term "destination charge" to refer to the amount FCA charged the dealers is not deceptive or unfair.

This conclusion aligns with that of another district court and the Ninth Circuit in a recent case involving similar facts. See *Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 788 (S.D. Cal. 2021) ("Reasonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller. The term 'Destination Charge' does not reasonably imply an absence of profit."), *aff'd*, No. 22-55170, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) ("We hold that a reasonable or average consumer would not be deceived by the destination charge underlying

8

each of Plaintiffs' claims."). Though not binding on this court, I find the reasoning in these opinions persuasive and agree that the term "destination charge" would not deceive a reasonable consumer into believing that the charge includes no profit.

Plaintiffs' omission theory fares no better under any of the Class States' consumer protection laws. For an omission theory to survive a motion to dismiss under at least Georgia, Michigan, Missouri, North Carolina, and Pennsylvania law, a plaintiff must allege facts supporting why the defendant had some ***duty to disclose*** what it omitted.[7] But Plaintiffs have alleged no facts to show that FCA had a duty to disclose an explanation of what is included in its destination charges. The only authority Plaintiffs point to that requires a disclosure is the AIDA, and there is no dispute that FCA fully complied with AIDA requirements by listing an accurate destination charge: the amount charged to the dealership for delivering the vehicle. Without any facts alleging a duty to disclose more explanation of what is included in the destination charge, Plaintiffs have failed to plead sufficient facts to show FCA's omission of such an explanation violates the Georgia, Michigan, Missouri, North Carolina, or Pennsylvania consumer protection statutes.

For an omission theory to survive a motion to dismiss under at least Florida, Iowa, Illinois, New York, and Ohio law, a Plaintiff must allege facts showing that the omitted information was a ***material*** fact.[8] And in Texas, "[m]ere nondisclosure of material information is not enough to

---

[7] *Skeen v. BMW of N. Am., LLC*, No. 2:13–cv–1531–WHW–CLW, 2014 WL 283628, at *5 (D.N.J. Jan. 24, 2014) (citing *Johnson v. GAPVT Motors, Inc.*, 663 S.E.2d 779, 784 (Ga. Ct. App. 2008)) (applying Georgia law); *Shain v. Advanced Tech. Grp. LLC*, No. 16-10367, 2017 WL 768929, at *12 (E.D. Mich. Feb. 28, 2017) (applying Michigan law); *Hartley v. Sig Sauer, Inc.*, No. 4:18-cv-00267-HFS, 2019 WL 11639620, at *7 (W.D. Mo. Mar. 25, 2019) (applying Missouri law); *City of High Point, N.C. v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 635–36 (M.D.N.C. 2020) (applying North Carolina law); *DeSimone v. U.S. Claims Servs., Inc.*, No. 19-6150, 2020 WL 2556949, at *2 (E.D. Pa. May 20, 2020) (applying Pennsylvania law).
[8] *Hall v. SeaWorld Ent., Inc.*, 747 F. App'x. 449, 453 (9th Cir. 2018) (applying Florida law); *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12–cv–1142–SVW–PLA, 2013 WL 690822, at *9 (C.D. Cal. Feb. 19, 2013) (applying Iowa law); *White v. DaimlerChrysler Corp.*, 856 N.E.2d

establish an actionable DTPA claim"—a Plaintiff must also show that "the consumer would not have entered into the transaction had the information been disclosed." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006). Here, Plaintiffs allege only that they saw the destination charges before purchasing their vehicles. D.I. 19 ¶¶ 12, 17, 22, 28, 33, 39, 45, 51, 57, 63, 67, 73, 79, 85, 89, 95. But simply seeing the destination charges does not automatically make those charges a substantial factor in Plaintiffs' purchasing decisions. Thus, Plaintiffs have not alleged facts showing that the listed destination charge was material to their purchasing decisions, let alone that they would not have purchased or leased their vehicles had FCA disclosed that there was profit baked into the destination charge. For this reason, Plaintiffs have failed to state a claim based on an omission theory under Florida, Iowa, Illinois, New York, Ohio, or Texas law.

Plaintiffs' arguments that the duty to disclose requirement does not apply to their case because it is a partial disclosure case, rather than a lack of disclosure case, are unpersuasive. Plaintiffs argue that the duty to disclose arose from "already ma[king] a misleading partial disclosure." Pl. Resp. 14. The "misleading partial disclosure" Plaintiffs point to is FCA's disclosure of the destination charges at all. But FCA was *required* to make that disclosure under federal law, and FCA listed destination charges that accurately reflect the amount charged to the dealerships for delivering the vehicles. As explained above, this disclosure is not misleading.

Plaintiffs also argue that, even if not deceptive, FCA's destination charge practices are at least unfair or otherwise violate the Class States' statutes because they violate the public policy of the AIDA. But Plaintiffs do not allege that the AIDA requires FCA to list the actual cost of transporting its vehicles to the dealership. Rather, the AIDA requires FCA to list "the amount

---

542, 549–50 (Ill. App. Ct. 2006); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022); *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 297 (N.D. Ohio 2020) (applying Ohio law).

10

*charged*, if any, *to [any] dealer* for the transportation of such automobile to the location at which it is delivered to such dealer." 15 U.S.C. § 1232(f)(3) (emphasis added). This is precisely what FCA did by listing the destination charge on the Monroney stickers, and Plaintiffs do not dispute otherwise. *See* D.I. 19 ¶ 130 (acknowledging that dealerships pay "FCA the full amount of the destination charge as a line item on the dealer invoice"). The statements Plaintiffs cite to by individual members of Congress explaining their personally held reasons for passing the AIDA cannot create a public policy that somehow requires more than the law that Congress passed. FCA's destination charge practices comply with the AIDA, and thus FCA did not violate public policy by using the term "destination charge" without providing a disclaimer that the destination charge includes a profit.

### b. *Suffering a Loss as a Result of the Practices*

Had Plaintiffs alleged sufficient facts to establish deception, unfairness, or fraud under the Class States' statutes, the Complaint would still fail to state a claim for another, independent reason: it does not allege sufficient facts to establish Plaintiffs suffered *a loss as a result* of such practices. All the Class States' statutes have causation and injury requirements that require the Plaintiffs to establish that FCA's destination charge practices caused them a cognizable injury.[9]

---

[9] *See, e.g.*, *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 213 (Fla. Dist. Ct. App. 2019) ("Causation under FDUTPA must be direct, rather than remote or speculative.") (cleaned up); *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 16–17 (Ga. 2006) (summarizing Georgia's causation requirement as requiring "a claimant who alleges the FBPA was violated as the result of a misrepresentation [to] demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation"); *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013) ("ICFA plaintiffs still must establish proximate causation. . . . That is, they must show that but for the defendants' conduct, they would have made a different purchasing decision . . . [and] that they would have been in a materially better position had they done so.") (cleaned up); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 397–98 (D. Mass. 2019) (summarizing Iowa law as requiring "factual causation," which is determined by a "but-for test"); *Tuck v. Wixom Smokers Shop*, No. 330784, 2017 WL 1034551, at *2–3 (Mich. Ct. App. Mar. 16, 2017) (requiring causation for a Michigan Consumer Protection Act claim and explaining, "[a]lthough the element

11

Like with determining whether a practice is unfair or deceptive, the question of causation and injury often raise a question of fact but may be decided as a matter of law on a motion to dismiss where a plaintiff has not pleaded sufficient facts showing that a defendant's practices were the cause of an injury.[10]

Here, Plaintiffs argue that causation and injury are met because they lost money by paying more for their vehicles than they otherwise would have due to FCA's "inflated" destination

---

of causation may be supported by circumstantial evidence, such evidence must facilitate reasonable inferences of causation, not mere speculation") (internal quotations and citations omitted); *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008) ("[T]he plain language of the [Missouri Merchandising Practices Act] demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice."); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) ("Causation is an essential element of any New York General Business Law section 349 claim. . . . Each plaintiff must individually plead . . . . that she was *injured as a result of* the insufficient or false disclosures.") (cleaned up) (emphasis added); *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (summarizing North Carolina law as requiring a showing that the unfair or deceptive act or practice "proximately caused injury to plaintiffs"); *Detrick v. 84 Lumber Co.*, No. 1:06cv2732, 2008 WL 11381819, at *11 n.8 (N.D. Ohio Jan. 25, 2008) ("Proximate causation is required to recover actual damages under the Ohio Consumer Sales Practices Act . . ."); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (holding that the Pennsylvania Unfair Trade Practices and Consumer Protection Act "creates a causation element, which requires a private plaintiff to demonstrate justifiable reliance"); *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009) ("That [causation] standard requires proof that the act was a substantial factor in bringing about the injury, without which the injury would not have occurred.").

[10] *See, e.g.*, *Belcastro v. Burberry Ltd.*, 16-cv-1080 (VEC), 2017 WL 5991782, at *6 (S.D.N.Y. Dec. 1, 2017) (granting motion to dismiss claims under Florida and New York law for failure to sufficiently plead an actual injury); *Carr v. Ocwen Loan Servicing, LLC*, No. 16-cv-04036-AT, 2017 WL 11495239, at *5 (N.D. Ga. June 27, 2017) (granting motion to dismiss claim under Georgia law for failure to sufficiently plead causation); *Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 541 (Ill. App. Ct. 2008) (granting motion to dismiss under Illinois law for failure to sufficiently plead causation or injury); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 544, 546–48 (N.D. Tex. 2014) (granting motion to dismiss under 35 states' consumer protection laws—including Iowa, Michigan, Missouri, North Carolina, and Texas—for failure to sufficiently plead proximate causation); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680–81 (6th Cir. 2017) (affirming district court's grant of motion to dismiss under Ohio law for failure to sufficiently plead an injury); *Prukala v. Chase Bank, N.A.*, 3:19-cv-1791, 2020 WL 5351042, at *4–5 (M.D. Pa. Sept. 4, 2020) (granting motion to dismiss under Pennsylvania law for failure to sufficiently plead an ascertainable loss or causation).

charges. Pl. Resp. Br. 17–18. In other words, Plaintiffs speculate that they would have gotten a better deal on their vehicles from the dealerships had FCA not inflated its destination charges. But mere speculation is not enough to meet the statutory pleading requirements of tying a compensable harm to the allegedly deceptive practice. *See, e.g.*, *Stewart*, 266 So. 3d at 213 ("Causation under FDUTPA must be direct, rather than remote or speculative.") (cleaned up).[11] Even though a destination charge which includes a profit to FCA will be higher than one which does not include a profit, Plaintiffs have not plausibly established that a higher destination charge to the dealership caused them to pay more in total for their vehicles. The Plaintiffs bought or leased their vehicles from the dealerships directly, not FCA. The dealerships were free to sell the vehicles at any total price they chose—even at a loss—and various factors can go into a dealership's pricing decisions for each vehicle. There are no facts in the Complaint explaining how the dealerships set the final contract prices of the vehicles or how the contract prices were negotiated between the Plaintiffs and the dealerships. So, even if FCA had lowered the destination charges charged to the dealerships, that does not mean that the dealerships would have sold the vehicles to the Plaintiffs at a total value that reflected those savings to the dealership. Perhaps the dealerships would have sold the vehicles to the Plaintiffs at the same rate and pocketed the extra profit themselves. Without alleging facts showing that the dealerships factored the destination charges into the price they charged Plaintiffs and that the dealerships would have lowered the price of the vehicles by the same amount if the destination charges were lowered, Plaintiffs have not alleged sufficient facts

---

[11] *See also, e.g.*, *Prukala*, 2020 WL 5351042 at *4 (finding failure to allege an ascertainable loss because "damages cannot be speculative," and "[t]he test for speculative damages is not necessarily about the difficulty in calculating the amount, but instead with whether there are identifiable damages") (cleaned up).

13

to show that a higher destination charge caused the Plaintiffs to pay more than they otherwise would have paid.

Indeed, the facts here are like other examples in which courts have rejected a subjective "overpayment theory of injury" under state consumer protection statutes. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 9 (1st Cir. 2017); *see also Belcastro*, 2017 WL 5991782, at *5–6. In *Shaulis v. Nordstrom*, for example, the First Circuit affirmed a district court's order granting motion to dismiss a claim under the Massachusetts Consumer Protection Act[12] where the Plaintiff's alleged harm was that she overpaid for a sweater because she thought she was getting a deal based on the sweater's price tag. *Shaulis*, 865 F.3d at 4–5. The price tag listed a purchase price of $49.97 and a "Compare At" price of $218. *Id.* at 4. According to the Plaintiff, this tag was deceptive because neither the retailer nor any other retailer had sold this sweater at $218 before. *Id.* Because she bought the sweater based on the deal she thought she was getting, the Plaintiff argued that the deception caused her to spend $49.97 she otherwise would not have spent. *Id.* at 10–11. The First Circuit rejected this argument, holding that "claims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated." *Id.* at 12.

Here, like in *Shaulis*, Plaintiffs have not provided an "objective measure against which the plaintiff's allegations may be evaluated." *Id.* While Plaintiffs might not go so far as to allege they would not have bought these vehicles at all had the destination charges reflected only the actual cost of transportation, they do argue that they spent more money on those vehicles than they otherwise would have. Plaintiffs have not sufficiently pleaded an objective measure of what the

---

[12] Although Massachusetts is not one of the states at issue in this case, its Consumer Protection Act has the same type of causation and injury requirements as the states at issue here. *Belcastro*, 2017 WL 5991782, at *3 n.1, *4 n.4.

14

vehicles *would have* cost had the destination charges been lower. As explained above, it cannot be that the hypothetical vehicle price would be the same price they paid minus whatever profit FCA received from its destination charge because it is the dealerships that negotiated the total price, and the complaint does not allege facts about those negotiations or the dealerships' practices. The Plaintiffs here "agreed to purchase items for a certain price and [cannot] show that the value of what [they] received was less than the value of what [they were] promised." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (cleaned up). Thus, having "got[ten] the benefit of their bargain," Plaintiffs have failed to establish that FCA's destination charges caused a cognizable injury under the states' consumer protection statutes. *Id.* at 365–66.

For the additional reason that Plaintiffs did not sufficiently allege facts showing that FCA's destination charges were the cause of a compensable injury to Plaintiffs, I grant FCA's motion to dismiss Plaintiffs' statutory claims under Counts II–XII.

### 2. Plaintiffs' Money Had and Received Claims (Count I)

Along with their statutory claims, Plaintiffs also allege that FCA's destination charge practices violate the Class States' common law doctrines of money had and received. While not identical, each state's money had and received doctrine requires Plaintiffs to establish at least: (1)

FCA holds money that (2) "in equity and good conscience belongs" to Plaintiffs.[13,14] Although this generally raises an issue of fact, a claim for money had and received can be decided by a court at the motion-to-dismiss stage if the complaint fails to plead facts that sufficiently allege a cognizable legal theory.[15]

---

[13] *See, e.g.*, *In re Standard Jury Instructions—Cont. and Bus. Cases*, 116 So.3d 284, 332 (Fla. 2013); *Seals v. Major*, 874 S.E.2d 423, 429 n.17 (Ga. Ct. App. 2022); *Drury v. McLean Cnty.*, 433 N.E.2d 666, 670 (Ill. 1982); *Key Pontiac, Inc. v. Blue Grass Sav. Bank*, 265 N.W.2d 906, 908 (Iowa 1978); *Youmans v. Charter Twp. of Bloomfield*, 969 N.W.2d 570, 598 (Mich. Ct. App. 2021); *Ward v. Luck*, 242 S.W.3d 473, 476–77 (Mo. Ct. App. 2008) (citing *Investor's Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 293 (Mo. 2007) (en banc)); *Lebovits v. Bassman*, 992 N.Y.S.2d 316, 318 (N.Y. App. Div. 2014); *Cole v. Wagner*, 150 S.E. 339, 340–41 (N.C. 1929); *Hummel v. Hummel*, 14 N.E.2d 923, 926 (Ohio 1938); *Hughey v. Robert Beech Assocs.*, 378 A.2d 425, 427 (Pa. Super. Ct. 1977); *Norhill Energy LLC v. McDaniel*, 517 S.W. 3d 910, 917 (Tex. App. 2017) (citing *Plains. Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W. 3d 296, 302 n.4 (Tex. 2015)).

[14] I note that, in Michigan, the common law claim of money had and received was traditionally considered under a claim of assumpsit, but assumpsit has since been abolished as an independent cause of action. *Youmans*, 969 N.W.2d at 598. Modern courts now appear to treat a money had and received claim the same as an unjust enrichment claim. *Id.*; *see also, e.g.*, *Gen. Ret. Sys. of City of Detroit v. Onyx Cap. Advisors, LLC*, No. 10–cv–11941, 2011 WL 4528304, at *12 (E.D. Mich. Sept. 29, 2011); *Gentry v. Charter Twp. of Clinton*, No. 360116, 2023 WL 2717788, at *9 (Mich. Ct. App. Mar. 30, 2023).

[15] *See, e.g.*, *City of Miami v. Eli Lilly and Co.*, No. 21-22636-Civ-Scola, 2022 WL 198028, at *9 (S.D. Fla. Jan. 21, 2022) (granting motion to dismiss money had and received claim under Florida law as to the manufacturer defendants); *Porter Pizza Box of Florida, Inc. v. Pratt Corrugated Holdings, Inc.*, No. 1:18-cv-0063-AT, 2018 WL 11447570, at *8 (N.D. Ga. Nov. 8, 2018) (granting motion to dismiss money had and received claim under Georgia law); *Page v. Alliant Credit Union*, No. 19-cv-5965, 2021 WL 1688176, at *3–4 (N.D. Ill. Apr. 29, 2021) (granting motion to dismiss money had and received claim under Illinois law); *Merrill v. Transworld Sys., Inc.*, No. 1:20-cv-183, 2020 WL 8474736, at *12–13 (W.D. Mich. Dec. 1, 2020) (granting motion to dismiss unjust enrichment claim under Michigan law, which, as discussed *supra* note 14, is treated the same as an action for money had and received); *Garrett v. Cassity*, No. 4:09-cv-01252 ERW, 2011 WL 1103637, at *4–5 & n.3 (E.D. Mo. Mar. 23, 2011) (granting motion to dismiss money had and received claim under Illinois, Iowa, or Missouri law and noting no material difference between the three); *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 622 (M.D.N.C. 2014) (granting motion to dismiss money had and received claim under North Carolina law); *Patchen v. Gov't Emps. Ins. Co.*, 759 F. Supp. 2d 241, 250 (E.D.N.Y. 2011) (granting motion to dismiss money had and received claim under New York law); *Patterson v. Rite Aid Corp. Hdqtrs.*, 752 F. Supp. 2d 811, 817–18 (N.D. Ohio 2010) (granting motion to dismiss money had and received claim under Ohio law); *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 269 (E.D. Pa. 2022) (granting motion to dismiss money had and received claim under Pennsylvania law);

Here, Plaintiffs' claims rely on the theory that any amount exceeding the cost of transportation that they paid to the dealership for the destination charge got passed from the dealer to FCA and that this amount belongs to Plaintiffs in equity and good conscience. These claims fail because Plaintiffs have not sufficiently alleged that this money fairly belongs to Plaintiffs. First, and as explained above, no reasonable person would have believed FCA's destination charge practices to be deceptive or unfair. Thus, Plaintiffs have failed to allege an inequity under these facts. Second, Plaintiffs have failed to allege that the money rightfully belongs to Plaintiffs rather than to the dealerships. Plaintiffs entered into contracts with the dealerships and do not dispute those contracts. Once the dealership performed on those contracts by giving them the vehicles Plaintiffs bought or leased, then the money became the dealerships' pursuant to those uncontested contracts. Perhaps the dealerships might have a money had and received claim against FCA for having to "overpay" for delivery, but Plaintiffs have not sufficiently alleged that FCA received money that rightfully belongs to *Plaintiffs* and not the *dealerships*.

Plaintiffs argue that not all states bar a claim for money had and received just because the defendant receives the benefit from a third-party, rather than from the Plaintiffs themselves. But even if indirectly conferring a benefit can sometimes support a money had and received or unjust enrichment claim under at least some of the states' laws, the actual transfer of the money is not the determinative issue here. It is not enough to simply show that the transfer of money started with Plaintiffs and ultimately ended up with FCA, but rather that fairness dictates that the money should still belong to Plaintiffs.[16] As explained above, Plaintiffs have not pled facts sufficient to show that the money should, in fairness, belong to Plaintiffs rather than FCA or the dealerships. Thus,

---

*Hidden Values, Inc. v. Wade*, No. 3:11–cv–1917–L, 2012 WL 1836087, at *11 (N.D. Tex. May 18, 2012) (granting motion to dismiss money had and received claim under Texas law).
[16] *See, e.g.*, *supra* note 13.

17

Plaintiffs have failed to state a claim for money had and received, and I grant FCA's motion to dismiss as to Count I.

### 3. Plaintiffs' Unjust Enrichment Claims (Count XIII)

Plaintiffs also allege that FCA's destination charge practices violated the Class States' common law doctrines of unjust enrichment. While the various state doctrines are not identical, they all require a similar equitable determination like the kind made for a money had and received claim. Specifically, all the Class States require that the defendant received some unfair benefit from plaintiffs.[17] Again, although this question generally raises an issue of fact, a claim for unjust enrichment can be decided by a court at the motion-to-dismiss stage if the complaint fails to plead facts that sufficiently allege a cognizable legal theory.[18]

---

[17] *Moore Handley, Inc. v. Major Realty Corp.*, 340 So. 2d 1238, 1239 (Fla. Dist. Ct. App. 1976); *St. Paul Mercury Ins. Co. v. Meeks*, 508 S.E.2d 646, 648 (Ga. 1998); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678–79 (Ill. 1989); *State Dept. of Hum. Servs. ex. rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001); *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993); *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Greenfield v. Long Beach Imaging Holdings, LLC*, 114 A.D.3d 888, 889 (N.Y. App. Div. 2014); *Butler v. Butler*, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015); *HAD Ents. v. Galloway*, 948 N.E.2d 473, 477 (Ohio Ct. App. 2011); *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995); *Lee v. Lee*, 411 S.W.3d 95, 111–12 (Tex. App. 2013).

[18] *City of Miami*, 2022 WL 198028, at *9 (granting motion to dismiss unjust enrichment claim under Florida law as to the manufacturer defendants); *Porter*, 2018 WL 11447570, at *8 (granting motion to dismiss unjust enrichment claim under Georgia law); *Page*, 2021 WL 1688176, at *3–4 (granting motion to dismiss unjust enrichment claim under Illinois law); *Garrett*, 2011 WL 1103637, at *4–5 & n.3 (granting motion to dismiss unjust enrichment claim under Illinois, Iowa, or Missouri law and noting no material difference between the three); *Merrill*, 2020 WL 8474736, at *12–13 (granting motion to dismiss unjust enrichment claim under Michigan law); *Patchen*, 759 F. Supp. 2d at 250 (granting motion to dismiss unjust enrichment claim under New York law); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *3 (N.D. Ill. Apr. 1, 2010) (granting motion to dismiss unjust enrichment claims under various states' law, including North Carolina); *Rite Aid*, 752 F. Supp. 2d at 817–18 (granting motion to dismiss unjust enrichment claim under Ohio law); *Brezinski*, 582 F. Supp. 3d at 268 (granting motion to dismiss unjust enrichment claim under Pennsylvania law); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 984–85 (S.D. Cal. 2014) (granting motion to dismiss unjust enrichment claims under various states' law, including Texas).

Granting FCA's motion to dismiss is appropriate here. FCA's destination charge practices cannot give rise to an unjust enrichment claim under these facts for the same reasons Plaintiffs have failed to state a claim for money had and received. As discussed above, Plaintiffs' Complaint does not sufficiently allege that FCA's destination practices were unfair or that the money FCA received rightfully belongs to Plaintiffs. Also as discussed above, Plaintiffs' arguments about indirect conferral of a benefit do not dictate a different outcome here. Thus, Plaintiffs have failed to state a claim for unjust enrichment, and I grant FCA's motion to dismiss as to Count XIII.

B. <u>Failure to Plead Claims with Sufficient Particularity (Rule 9)</u>

In its motion to dismiss, FCA argues that Plaintiffs' deceptive and unfair practices claims must be dismissed under Rule 9(b) for failure to plead claims sounding in fraud with particularity. Plaintiffs respond that Rule 9(b) does not apply to all the claims because some are based in unfairness, not deception or fraud. Because this Court finds that the Complaint fails to state a claim under the plausibility standard of Rule 8, and because that standard applies to all claims whether sounding in fraud or not, this court need not reach FCA's Rule 9(b) arguments.

IV. **CONCLUSION**

For these reasons, the Court grants FCA's motion to dismiss (D.I. 21) Counts I–XIII of Plaintiffs' First Amended Class Action Complaint. An appropriate order will follow.